UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 10-CV-10359-NMG

**CITY OF LOWELL,**

    Plaintiff,

v.

**ENEL NORTH AMERICA, INC.,**

    Defendant

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Now comes the Plaintiff, City of Lowell (the "City"), and moves this Honorable Court for a Preliminary Injunction in the above-captioned matter.  As reasons therefor, the City states that the defendant, Enel North America, Inc. ("ENEL"), is in breach of an agreement, originally between two private entities, the Proprietors of the Locks and Canals on Merrimack River (the "Proprietors") and Wang Laboratories, Inc. ("Wang") regarding the height of structures (including flashboards) to hold back water rising over the level of the Pawtucket Dam, signed on August 26, 1980 (the "Agreement"). The substance of the Agreement is that the owner of the Pawtucket Dam may not install structures more than four (4) feet above the dam from March through June, and five (5) feet above the dam from July through February. ENEL is currently in the process of installing flashboards on the capstone of the Pawtucket Dam which will be five feet in height.

As further grounds therefor, the Board relies on the within Memorandum of Law and the Verified Complaint filed herewith.

## I. FACTS

The plaintiff, City of Lowell, relies on the facts averred in the Verified Complaint filed herewith.

## II. ARGUMENT

### A. The Standard For Injunctive Relief

The standard in Massachusetts for the grant of preliminary injunctive relief in actions between private parties is well settled. An applicant must show: (1) that there is probability of success on the merits; (2) that the plaintiff will suffer irreparable harm without injunctive relief pendite lite; and (3) that the harm the plaintiff will suffer if denied injunctive relief outweighs the harm the defendant will suffer if restrained. Packaging Industries Group, Inc. v. Chaney, 380 Mass. 609, 617, (1980). See also, Commonwealth v. County of Suffolk, 383 Mass. 286, 288 (1981); Boston Athletic Ass'n v. International Marathons, Inc., 392 Mass. 356, 362-363 (1984).

However, in cases such as the instant case in which the plaintiff is a public entity, the standard for obtaining injunctive relief is merely a showing that the granting of injunctive relief is consistent with the public interest. Commonwealth v. Massachusetts CRINC, et al., 392 Mass. 79, 89 (1984). Furthermore, the Court in Commonwealth v. Massachusetts CRINC stated that the standard of requiring a demonstration of immediate irreparable harm is **not** a prerequisite to the allowance of an injunction in a case in which the plaintiff is a public entity, and "[w]hen the government acts to enforce a statute or make effective a declared policy of the [the Legislature]." 392 Mass. 79, 89 (1984) (citing United States v. D'Anolfo, 474 F.Supp. 220, 222 (D. Mass. 1979)). The Court added that "before issuing the preliminary injunction, a judge is required to determined that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." Id. at 89. While this case does not fall squarely within the ambit of case law under Massachusetts CRINC, the Court should hold that the spirit

of the Massachusetts CRINC decision is to protect the public interest when appropriate in deciding whether injunctive relief is possible.

In this matter, the City is likely to succeed on the merits, and will suffer irreparable harm if injunctive relief is not granted which far outweighs any harm the defendant may suffer by the granting of this relief. Furthermore, as will be described in detail below, an injunction is in the public interest because the City, which is a public entity, is seeking to enjoin violations of the Agreement.

> **B.** **This Court Should Grant Injunctive Relief Because The City Is Likely To Succeed On The Merits**

This Court should grant injunctive relief to the City because the City has a strong likelihood of succeeding on the merits under the applicable standard for injunctive relief. The language of the Agreement is clear, where it states, in pertinent part,

> "(T)he Proprietors hereby agree not to maintain any Structure at their Pawtucket Dam at an elevation over ninety-two and 2/10 (92.2) feet above mean sea level, U.S.G.S. Gauge, during the months of July, August, September, October, November, December, January and February, and not to maintain any Structure at their Pawtucket Dam at an elevation over ninety-one and 2/10 (91.2) feet above mean sea level, U.S.G.S. Gauge, during the months of March, April, May and June, said two elevations being five (5) feet and four (4) feet, respectively, above the capstone of said Pawtucket Dam.  The Proprietors further agree the Structure is defined as flashboards or other means of a similar nature which will fail to hold back water if the river rises one foot above the level of the Structure… This Agreement shall be binding upon and shall inure to the benefit of the Proprietors and Wang and their successors and assigns." See Verified Complaint, Exhibit A.

The City is a successor to Wang for purposes of the Agreement. See Verified Complaint, ¶ 8. ENEL is a successor to the Proprietors for purposes of the Agreement. See Verified Complaint, ¶¶11-12. ENEL knows of the Agreement, and has complied with it in the past. See Letter from ENEL to FERC dated March 13, 2009, attached hereto as "Exhibit 1." Therefore, given the defendant's knowledge and subsequent breach of the

clear and express language of the Agreement, the City has a strong likelihood of success on the merits of its complaint, and its motion for a preliminary injunction should be granted.

### C. This Court Should Grant Injunctive Relief Because The Harm To The City Greatly Outweighs Any Harm To The Defendant

This Court should grant injunctive relief to the City because the potential harm to the City greatly outweighs any potential harm to the defendant ENEL. The Agreement is binding upon and inures to the benefit of the City and ENEL, as successors to Wang and the Proprietors, respectively. The only feasible reason for the Agreement to exist in the first place is to prevent high waters, and attendant flooding, on the Merrimack River during the spring months, when the region experiences heavier rainfall. The City is the current owner of the property to which the Agreement attaches. See Verified Complaint, ¶ 8. Therefore, it runs the risk of flooding on its property if ENEL is not prohibited from installing five foot flashboards on the Dam. Furthermore, the timeframe when ENEL is prohibited from maintaining structures over four feet on the Dam is limited, making it impossible for the City to obtain satisfactory relief if an injunction is not granted, as time may well moot the City's case, at least for the 2010 calendar year. However, if injunctive relief is not granted, the City cannot adequately protect itself from violations of the Agreement, given the timing and nature of ENEL's repair of the flashboards. Furthermore, ENEL was put on notice of the City's intent to file the instant action on February 18, 2010, and, as the photographs attached to the Verified Complaint as Exhibit B demonstrate, ENEL had not yet installed the top one foot boards to the flashboard system. Since ENEL has not begun to attach the last foot of boards to the flashboard

system, and since they are authorized under the Agreement to maintain four foot flashboards at the current time, ENEL's damages would be minimal.

ENEL has historically claimed that they are prohibited from installing four foot flashboards on the Pawtucket Dam by the license ENEL has from the Federal Energy Regulatory Commission ("FERC"). However, FERC has allowed ENEL to install the four foot high flashboards consistently in the past, most recently in 2009. See Letter from FERC to ENEL dated May 1, 2009, attached hereto as "Exhibit 2." Therefore, ENEL has sufficient authority to install four foot flashboards from March through June. Furthermore, nothing in the City's Proposed Order would prevent ENEL from continuing their repair of the flashboards on the Pawtucket Dam to the extent that such repair merely restores the four foot sections of flashboards, as ENEL has done in the past.

As ENEL would suffer limited or no harm from the granting of injunctive relief, while the City runs the risk of great harm, coupled with the City's potential inability to enforce the Agreement absent an injunction, this Court should grant the City request for injunctive relief.

### D. The Public Interest Dictates The Granting Of The Injunctive Relief Requested By The City.

The public interest, as embodied in the limiting language of the Agreement pertaining to the City of Lowell, requires the granting of injunctive relief. Risk of harm to the public interest is an appropriate factor to be considered by the Court when determining whether a preliminary injunction should issue. GTE Products v. Stewart, 414 Mass. 721, 723 (1993); Brookline v. Goldstein, 388 Mass. 443, 447 (1983). In this matter, the City has repeatedly informed ENEL that ENEL, as owner and operator of the Pawtucket Dam, is prohibited from maintaining structures, namely flashboards, on the

Dam over four feet in height from March through June. The defendant has historically complied with the Agreement, including complying in 2009. See Exhibit 1. Not only is the City a public entity, the very embodiment of a public interest in and of itself, but the property owned by the City to which the Agreement attaches is public property. Even in a strict reading of the Agreement narrowly focusing on the single piece of property in question, the public interest in protecting a public piece of property remains. Beyond that, there is the greater public interest to be weighed, that interest of other citizens of the City whose property is similarly situated to the City's land, and subject to potential flooding if the river level rises. Based on these facts, the public interest is served by ordering strict compliance with the Agreement.

### III.   CONCLUSION

For all of the above reasons, the City requests that this Court grant a preliminary injunction in the form set forth in the Verified Complaint.

                              CITY OF LOWELL, PLAINTIFF

_____
R. Eric Slagle, Assistant City Solicitor
BBO #658813A
City of Lowell Law Department
375 Merrimack Street, 3rd Fl.
Lowell MA 01852-5909
Tel: 978-970-4050
Fax: 978-453-1510
eslagle@lowellma.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document, was filed through the Electronic Case Filing System for filing and electronic service to the registered participants as identified on the Notice of Electronic Filing on March 23, 2010.

/s R. Eric Slagle<br>
R. Eric Slagle, Assistant City Solicitor