United States District Court
District of Massachusetts

```
_____
                               )
CITY OF LOWELL,                )
       Plaintiff,              )
                               )
       v.                      )   Civil Action No.
                               )   10-10359-NMG
ENEL NORTH AMERICA, INC.,      )
       Defendant.              )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

The City of Lowell ("the City") brings suit against Enel North America, Inc. ("Enel") for breach of contract and also seeks a declaratory judgment. Before the Court is the City's motion for a preliminary injunction.

## I.   Background

### A.   Factual Background

This dispute concerns the installation of flashboards above the Pawtucket Dam ("the Dam") on the Merrimack River in Lowell, Massachusetts. Flashboards are removable boards or structures placed above the top of a dam to raise its water retention level. According to Enel, flashboards serve two purposes: 1) to increase water volume retained behind the dam which, in turn, permits the operator to better control turbines downstream and 2) to collapse and give way in response to natural high water events, thereby releasing water gradually. In accordance with the latter

function, flashboards at the Dam did give way (i.e., some collapsed and others bent), as designed, during the most recent, record-setting rains of February and March, 2010.

More specifically, this case pits the City's alleged contractual rights against the defendant's claim that a federally-issued license controls flashboard height at the Dam. In August, 1980, the Proprietors of Locks and Canals on the Merrimack River ("the Proprietors") (a private company that built and/or operated dams and canals along the Merrimack River) signed a contract ("the Wang Agreement") with Wang Laboratories, Inc. ("Wang"). Wang owned property upstream from the Dam. It sought to make improvements on its property and "desire[d] to determine the normal water levels of the Merrimack River at [its land]". Pursuant to the agreement, Wang paid ten dollars and "other good and valuable consideration" and the Proprietors agreed to refrain from maintaining flashboards higher than four feet from March through June of each year, when flooding was most likely, or higher than five feet for the remainder of each year. The City acquired the land by deed in 1994 (and arguably became the beneficiary of the Wang Agreement) and the land is currently used as an athletic field.

In April, 1983, the Federal Energy Regulatory Commission ("FERC") granted a license authorizing Boott Mills (a former Merrimack River textile mill) and the Proprietors to construct,

operate and maintain the Lowell Hydroelectric Project at the Dam ("the Project"). That license provided that the Project would consist of, inter alia, "the 1,093-foot-long and 15-foot-high Pawtucket Dam with 5-foot-high collapsible flashboards". In December, 1983, FERC issued an order approving the transfer of the license to Boott Hydropower, Inc. ("Boott") (apparently a Massachusetts corporation formed by an investment company that previously owned all the stock of Boott Mills and the Proprietors) as a joint-licensee and in early 1984, Boott completed the acquisition of all of the right, title and interest in the Dam from Boott Mills and the Proprietors. Boott is a subsidiary of Enel.

The parties' allegations about the historical use of flashboards at the Dam are in conflict. The City asserts that Enel has historically taken the position that the FERC license prevents it from installing four-foot flashboards but that, nevertheless, FERC has "consistently" authorized the use of four-foot boards, most recently in 2009. Enel, by contrast, contends that Boott has continuously installed, maintained, repaired and re-installed five-foot flashboards and 2009 was the only exception.

To add confusion, in 2009, Boott requested that FERC allow the use of four-foot boards early in the year and additional one-foot top boards after July 1. In that request, Boott referred to

the so-called "4+1" design, in which a one-foot top board sits atop a four-foot board and can be removed, as the "original" design which has "been historically used on the ... Dam". Boott explicitly contrasted that design with the one authorized by the license, i.e. the same license Boott now seeks to enforce in this action, which specifies five-foot boards.[1]

In response to recent concerns expressed by residents about flooding, FERC opened an investigation into the same subject at issue in this suit, i.e., the Dam's flashboard and flow-control operations. FERC directed Boott to investigate options for a "crest control" system which could completely collapse during high flows. The investigation is ongoing and, in early March, 2010, FERC acknowledged an increased urgency. Responding to additional resident complaints, the agency demanded that Boott file its preferred solution to the problem within 15 days. Shortly thereafter, Boott reported that it would proceed with installing a pneumatic crest control gate system which is apparently the best available technology. Boott plans to file a license amendment application to that effect "in the near future".

---

[1] Why Boott asserts not only the right but the obligation to employ the system currently authorized by the license (described by it as the "least desirable" option under which it was "unable to meet project operations criteria and reasonable flood control measures [and which] adversely impacts maintenance of normal water levels") is an enigma.

### B.   Procedural History

On February 19, 2010, the City filed its complaint, accompanied by a motion for a preliminary injunction, in the Massachusetts Superior Court Department for Middlesex County. Defendants removed the case to this Court on March 1, 2010.[2] After removal, the parties requested additional time to work out issues surrounding plaintiff's motion for a preliminary injunction. Unable to do so, the City re-filed its motion in this Court on March 23, 2010 and Enel opposed it on the same day. A hearing on the motion was held on Thursday, March 25, 2010 and the parties submitted supplemental memoranda the following week.

## II.   Analysis

### A.   Legal Standard

To be entitled to preliminary injunctive relief, a movant must demonstrate

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted).

---

[2] For purposes of the instant motion, the Court exercises subject matter jurisdiction because 1) there is at least a colorable argument for preemption (the grounds upon which Enel removed this case) and 2) the parties do not dispute jurisdiction on other federal question grounds about which there has been no briefing.

The City contends, without citation, that Massachusetts law governs its motion.  Although Massachusetts law does not differ significantly from the federal standard, the City seeks to impose an alternate state law proposition which would lower its burden of proof because it is a public entity.  The City argues that it need only show that injunctive relief is in the public interest and that a showing of immediate irreparable harm is unnecessary.

The City's position is untenable.  This is not a diversity action and the City cites no authority for applying differing Massachusetts standards in a non-diversity case.  In any event, the cited opinion of the Supreme Judicial Court, Commonwealth v. Mass. CRINC, 466 N.E.2d 792 (Mass. 1984), is inapposite and the City acknowledges as much.  CRINC holds that a demonstration of irreparable harm is unnecessary when the government acts to enforce a statute or declared legislative policy but here the City seeks to enforce a private contract.  The City nonetheless asks the Court to apply the "spirit" of CRINC.  The Court declines the City's invitation, preferring to stick to the law, and thus the federal standard is applied below.

**B.   Application**

The City seeks a preliminary injunction to prohibit defendant from installing five-foot flashboards on the Dam before the end of June each year and to require it to remove any flashboards higher than four feet.

### 1.   **Irreparable Harm**

A finding of irreparable harm must be "grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). The threat must be real and immediate. E.g., Rubacky v. Morgan Stanley Dean Witter Credit Corp., 104 Fed. App'x 757, 758 (1st Cir. 2004).

The City asserts harm on two fronts. First, it contends that its parcel is being flooded "and has become unusable for its current purpose as an athletic field". Second, the City states that flooding has occurred in neighborhoods upstream, including the apparently vulnerable Clay Pit Brook neighborhood. According to the City, the five-foot flashboards are causing or exacerbating flood damage.

In support of that contention, the City has submitted several affidavits, one from an engineer, Joseph Canas ("Canas"), purporting to give an expert opinion that the use of five-foot boards increases flooding in the Clay Pit Brook neighborhood and that the greatest risk occurs in the Spring. Using a model in which the flashboards maintain their installed height at a steady rate of water flow, Canas estimates that a 0.2-foot incremental rise in the water level along Clay Pit Brook would result from using five-foot instead of four-foot boards. Some areas of the

neighborhood may, however, in his opinion, experience a water level difference of up to 0.8 feet. Canas also suggests that, in 68 of the past 83 years, peak flow on the river has occurred between March 1 and June 30. Canas's affidavit does not specifically pertain to the parcel of land subject to the Wang Agreement.

Enel responds that there is no immediate threat of harm. It repeatedly refers to the recent heavy rain storms in February and March, 2010, during which it alleges that flooding did not occur. Moreover, Enel argues, the City cannot show that, when flooding has occurred in the past, the Dam's flashboards caused or contributed to the problem. Defendant also notes that, because five-foot flashboards have already been installed and the current water level is above the flashboards, Boott cannot repair or change the flashboards until the river recedes which is unlikely to occur anytime soon. Finally, Enel invokes the doctrine of laches, contending that the City should be barred from injunctive relief because it has waited 16 years since acquiring the property and over one month since filing the lawsuit in which it seeks an injunction.

In its supplemental memorandum, Enel updates its factual allegations. First, it contends that no flooding had occurred in the Clay Pit Brook neighborhood as of March 31, 2010 despite the record rainfall. Second, it reports that "the vast majority of

the flashboards ... have either been totally washed away or are bent over as designed to operate". Enel maintains that, as a result, the Dam is currently operating as though the effective overall flashboard height were 1.5 feet.

The Court finds that the City has failed to demonstrate a serious risk of irreparable harm beyond speculation. The City's best evidence is the Canas affidavit which is insufficient for several reasons. Most importantly, it employs an admittedly unrealistic steady-state model in which water flow is constant and "non-failing" flashboards appear to maintain their installed heights. In addition to the fact that water flows obviously vary, however, numerous affidavits make clear that the flashboards do not maintain their installed height and actually collapse or bend based upon water pressure. Indeed, presumably five-foot boards, subject to greater pressure, would bend or collapse more readily than four-foot boards. The flashboards' tendency to collapse or bend obviates the predicted 0.2 foot incremental difference in water levels.

In any event, even if the Court accepts the Canas affidavit on its face, the presumed difference in water levels resulting from the use of four-foot or five-foot flashboards is minimal and, critically, the City presents no evidence that irreparable harm will result from such an incremental difference. At oral argument, the City suggested a possible parade of horribles from

disease to plummeting property values but they would be attributable, if they were to happen, to the <u>overall</u> risk of massive flooding, not to the increased flood risk based upon the use of five-foot flashboards. There is no indication that a one-foot difference in the height of flashboards would have any significant impact in preventing a potential flood.

Three additional observations are warranted:

1) Enel is likely correct that the crucial time for intervention has passed. Five-foot boards have been installed and an order requiring their removal would entail a "mandatory preliminary injunction" which carries an elevated burden of proof. E.g., <u>Braintree Labs., Inc.</u> v. <u>Citigroup Global Markets, Inc.</u>, 671 F. Supp. 2d 202, 207 (D. Mass. 2009).

2) The current high water level physically precludes enforcement of the requested injunction which would appear to be decisive in this case.

3) The City is apparently attempting to warp a contractual dispute specifically related to a parcel of land used as an athletic field into protection of a residential area (the Clay Pit Brook area) whose residents are not a party to that agreement but who are (perhaps justifiably) most concerned about flooding.

With respect to the third observation, although the interests of non-parties may sometimes be considered in deciding whether to issue a preliminary injunction, the focus of this

irreparable harm analysis is the City's parcel to which the Wang Agreement and this lawsuit pertain.  Cf.  CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir. 1995) ("[T]he issuance of a preliminary injunction requires a showing of irreparable harm to the movant rather than to one or more third parties.") (emphasis in original).  Here, the City's numerous filings lack any substantive showing or allegation of irreparable harm to its interest in the parcel of land it acquired from Wang.

Accordingly, although flooding can certainly be a tragic event for affected residents, the City has failed to show that it would, absent the requested injunction, suffer immediate, irreparable harm to its property.

### 2. Likelihood of Success on the Merits

The inability to demonstrate an immediate threat of irreparable harm is sufficient to deny the City's motion for a preliminary injunction.  See Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir. 1987) ("Because of our analysis as to irreparable harm [i.e., affirming that it had not been sufficiently shown], we need not reach the question of likelihood of success on the merits.").  Nonetheless, because likelihood of success on the merits is often the critical factor in analyzing motions for a preliminary injunction, e.g., Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citations

omitted), the Court will consider it briefly.

Here, the City argues that it is likely to succeed on the merits because 1) the terms of the Wang Agreement clearly prohibit five-foot flashboards before July of each year and 2) the City is a successor to Wang due to its purchase of Wang's land in 1994. Moreover, the City claims that Enel has complied with the agreement in the past.

Enel's response includes the following arguments:

1) The City's claims for breach of contract and a declaratory judgment are preempted by the Federal Power Act and Boott's FERC license because a) FERC occupies the entire field of hydroelectric power projects (field preemption) and b) the license directly conflicts with the City's attempt to restrict flashboard height (conflict preemption). See, e.g., Skokomish Indian Tribe v. United States, 332 F.3d 551, 561 (9th Cir. 2003).

2) This litigation is an impermissible collateral attack on FERC's ongoing investigation of alternatives for the Dam's crest control, the review of which will be statutorily restricted to the United States Circuit Court of Appeals. 16 U.S.C. § 825*l*.

3) Enel and Boott are neither successors nor assignees to the Wang Agreement and therefore are not bound by it.

The City has not demonstrated a likelihood of success on the merits because too many factual disputes and uncertainties remain. They include:

1)  whether the Wang Agreement is still enforceable, i.e., was it restricted or nullified during FERC's 1983 licensing process;

2)  the parties' inability to report an undisputed account of their historical practice with respect to flashboards and compliance with the Wang Agreement before and after the issuance of the FERC license;

3)  an ambiguity, based upon the current record, with respect to whether the license intended to establish an absolute height requirement, as defendant contends, or a ceiling under which four-foot boards are permitted, as plaintiff contends; and

4)  this Court's potential intrusion into the proceedings now pending before FERC which may have exclusive jurisdiction over such matters in the first instance. See Granite State Outdoor Adver., Inc. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002) ("In order to establish that ... a likelihood of success ... the movant must establish that the case is not likely to be moot.").

In the absence of resolution of these issues, the City cannot demonstrate a likelihood of success.

### C.  Balance of Harms and Public Interest

An analysis of these two factors is unnecessary. See Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness of Commonwealth of Mass., 649 F.2d 71, 74 n.4 (1st Cir. 1981).

**ORDER**

In accordance with the foregoing, plaintiff's motion for a preliminary injunction (Docket No. 4) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 12, 2010