UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10359NMG

| | |
|---|---|
| CITY OF LOWELL, | |
| Plaintiff, | |
| v. | |
| ENEL NORTH AMERICA, INC., | |
| Defendant. | |

DEFENDANT ENEL NORTH AMERICA, INC.'S REPLY TO PLAINTIFF
CITY OF LOWELL'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
– LEAVE TO FILE GRANTED ON SEPTEMBER 1, 2010

The Defendant Enel North America, Inc. hereby submits the following Reply to Plaintiff

City of Lowell's Opposition to Defendant Enel North America, Inc.'s Motion to Dismiss or, in

the Alternative, for Summary Judgment.

ARGUMENT

I.    THE CITY IS NOT ENTITLED TO DISCOVERY ON ITS CLAIMS AGAINST
      DEFENDANT ENEL BECAUSE THE CITY CANNOT DEMONSTRATE A
      PLAUSIBLE ENTITLEMENT TO RELIEF ON THE THEORY OF CORPORATE
      DISREGARD

In the present case, the City admittedly cannot establish a plausible entitlement to relief

against Defendant Enel under the doctrine of corporate disregard.[1]  Specifically, the City states

that "[t]he status of discovery in this case prohibits the plaintiffs from established [sic] the above

factors" enunciated in My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619

(1968), and further, the City states that it "cannot present facts to justify opposition" to

---

[1]      Significantly, the City did not allege in its Verified Complaint liability on the part of Defendant Enel on a
theory of corporate disregard, but rather, the City erroneously alleged that "Enel currently owns and
operates the Dam." Verified Complaint, at ¶ 11.

Defendant Enel's Motion to Dismiss or, in the Alternative, for Summary Judgment. City's Memorandum of Law, at 8, 18. The City points out, however, that Defendant Enel and Boott Hydropower, Inc. ("Boott Hydropower") share many of the same officers and directors and a common place of business and, therefore, the City argues that it should be "allowed discovery . . . to determine the true nature of the relationship between Boott and ENEL. . . ." City's Memorandum of Law, at 7-9; Slagle Affidavit, Exhs. B and C. In other words, the City admits that it has no plausible basis for holding Defendant Enel responsible for the actions of Boott Hydropower, Inc., which owns and operates the Pawtucket Dam pursuant to its License as issued by the Federal Energy Regulatory Commission ("FERC"), but the City is arguing for the opportunity to go on a fishing expedition to see if it might be able to discover any evidence that could possibly justify its claims against Defendant Enel under the theory of corporate disregard.

Importantly, the discovery process is not available where, as here, "at the complaint stage, a plaintiff has nothing more than unlikely speculation." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir.1999). "While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation." Id. In order to survive a motion to dismiss, the City must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This means that the City must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted). See also Rodríguez- Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir.2007). Moreover, contrary to the City's argument that "Defendant Enel's motion is, in reality, a motion for summary judgment," see City's Memorandum of Law, at 19, this Court may freely look to matters of public record, documents the authenticity of which

are not disputed by the parties, documents central to the City's claims, and documents referenced in the City's Verified Complaint, without converting Defendant Enel's motion to dismiss into a motion for summary judgment. Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

In the present case, all of the City's claims (and newly proposed claims) arise out of the use of flashboards on the Pawtucket Dam, yet it is a matter of public record that Boott Hydropower is the owner and federally-licensed operator of the Pawtucket Dam. See Slagle Affidavit dated August 13, 2010, Exh. A (Deed, Bill of Sale and Grant of Easements to Boott Hydropower); Engel Affidavit dated March 23, 2010, at ¶ 3; Exhs. A and B (FERC License). Additionally, it is a matter of public record that Defendant Enel and Boott Hydropower are separate and distinct corporate entities. Slagle Affidavit, Exhs. B and C. Accordingly, the corporate disregard doctrine is the only conceivable basis for the City to be seeking to hold Defendant Enel responsible for the actions of Boott Hydropower in using flashboards on the Pawtucket Dam.

However, the presumption of corporate separateness may be overcome only "in rare situations . . . where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice." Hutchins v. Cardiac Science, Inc., 456 F.Supp.2d 173, 194 (D.Mass. 2006). Consequently, to invoke the doctrine, "a plaintiff must first establish an independent basis to hold the corporation liable." Id. Further, in order to hold one corporation liable for the actions of another in accordance with My Bread, "the prerequisites of the corporate disregard doctrine must be pleaded and proven." Omni-Wave Electronics Corp. v. Marshall Industries, 127 F.R.D. 644, 648 (D.Mass. 1989). That Defendant Enel and Boott Hydropower share a common local address as noted by the City is not one of the My Bread factors and is patently insufficient to

create an inference of pervasive control or confused intermingling of business assets as required for purposes of disregarding their separate and distinct corporate identities. Additionally, the common management of Defendant Enel and Boott Hydropower, "standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation or its employees." My Bread, 353 Mass. at 619. Finally, the City has not alleged any facts whatsoever upon which to base a finding that corporate disregard is necessary to defeat the effects of a fraud or wrong or to prevent gross inequity in this case as required to invoke successfully the corporate disregard doctrine. Omni-Wave, 127 F.R.D. at 648; Hoffman v. Optima Systems, Inc., 683 F.Supp. 865 (D.Mass. 1988) (plaintiff must show that piercing the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity). Accordingly, the City has failed to demonstrate a plausible entitlement to relief against Defendant Enel on the theory of corporate disregard, and the City's claims against Defendant Enel must be dismissed. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 129 (1st Cir. 2006), citing, Commonwealth v. Beneficial Fin. Co., 360 Mass. 188, (1971) (courts will only look through the corporate veil to "accomplish . . . essential justice"); My Bread, 353 Mass. at 619 (limiting the application of the corporate disregard doctrine only to "rare particular situations in order to prevent gross inequity"); Birbara v. Locke, 99 F.3d 1253, 1239 (1st Cir. 1996) (collecting sources).

II.   FEDERAL PREEMPTION IS NOT LIMITED IN APPLICABILITY TO STATE STATUTES, REGULATIONS AND ORDINANCES

The City asserts that "[p]reemption does not apply to the Agreement, because it is not a state law or local ordinance or regulation." City's Memorandum of Law, at 12-13, citing Ark. La. Gas Co. v. Hall, 453 U.S. 571, 584 (1981) ("Every pre-emption case involves a conflict between a claim of right under federal law and a claim of right under state law"). In so arguing, the City places an incorrect emphasis on whether the Wang Agreement is a "state law or local

ordinance or regulation" and ignores the Supreme Court's holding in Ark. La. Gas Co.

Federal preemption applies in a number of contexts and is not limited to an analysis of comparing a federal law and a "state law or local ordinance or regulation" as argued by the City. In Ark. La. Gas Co., the Supreme Court analyzed whether the "filed rate doctrine"[2] forbids a state court "to calculate damages in a breach-of-contract action based on an assumption that had a higher rate been filed, [FERC] would have approved it." Ark. La. Gas Co., 453 U.S. at 573. In other words, the Court analyzed whether the state court's action awarding damages in a breach-of-contract action was preempted by FERC pursuant to the filed rate doctrine. See id. at 580-581. In holding that the state court's action was preempted, the Supreme Court specifically noted that "the mere fact that respondents brought this suit under state law would not rescue it, for when congress has established an exclusive form of regulation, there can be no divided authority over interstate commerce." Id. at 580 (internal quotations and citation omitted).

Where Congress has granted exclusive regulatory authority to FERC, FERC alone is empowered to make initial determinations, and actions such as a state court award of damages for a breach of contract are preempted. See Chicago & North Western Transp. Co. v. Kalo Brick & Title Co., 450 U.S. 311, 324, 326 (1981) (holding that where the Interstate Commerce Commission had ruled on all issues that a party had sought to raise in the state court suit, the common-law action was pre-empted). Moreover, a party may not gain from the courts relief it has been denied by a federal regulatory agency such as FERC on matters that Congress has specifically assigned to that agency. See Ark. La. Gas Co., 453 U.S. at 580-582; Kalo Brick, 450 U.S. at 324 (noting that to hold otherwise "would merely approve 'an attempt by a disappointed [party] to gain from the [state] courts the relief it was denied by the [Interstate Commerce

---

[2] The filed rate doctrine prohibits a federally regulated seller of natural gas from charging rates higher than those filed with FERC pursuant to the Natural Gas Act, 15 U.S.C. § 717 et seq.

Commission]'").

Here, the City's claims are likewise preempted because FERC has explicitly ruled on the matter of flashboards in granting the 1983 License and will do so again in response to Boott Hydropower's License Amendment application.[3]   The City does not dispute that the Wang Agreement purports to "regulate[] and control" flashboard height and that it is these provisions of the Wang Agreement (and Enel's purported violations) upon which the City bases its claims. Plaintiff's Memorandum of Law in Opposition to Defendant Enel North America, Inc.'s Motion to Dismiss, or in the Alternative, for Summary Judgment at 9-10.   Further, the City's acknowledgement of exclusive federal jurisdiction in "navigable waterways" (Plaintiff's Memorandum at 13) and the scope of the FPA's preemptive authority (id.) betrays at least an implicit recognition (if not an outright admission) that FERC indeed has exclusive jurisdiction over matters of dam engineering, design and operation, including flashboard height.   Thus, whether the Wang Agreement is a "state law or local ordinance or regulation" is of no consequence in this Court's preemption analysis.   It is enough that Congress has provided FERC with broad and exclusive authority to govern and regulate matters of dam engineering, design and operation, and that the City's state law claims purport to intrude on FERC's jurisdiction. Accordingly, the City's claims are preempted and its claims must be dismissed.

---

[3]   On or about July 22, 2010, the City filed a Motion to Intervene with FERC, asking FERC to enforce the Wang Agreement against Boott Hydropower.   On August 24, 2010, FERC allowed the City's Motion, thereby authorizing the City to participate fully in the ongoing proceedings at FERC with respect to Boott Hydropower's proposed crest gate system.   The City's status as an intervenor in the ongoing FERC proceedings that will ultimately determine issues related to the City's claims in this Court further supports the conclusion that the City's claims in the present case constitute an impermissible collateral attack on the ongoing FERC proceedings.   See 16 U.S.C. § 825l(b) (review of FERC orders only in U.S. Court of Appeals for circuit where licensee located or in District of Columbia).   Further, as argued by Defendant Enel in opposing the City's Motion to Amend its Complaint in this case, the City specifically alleged in its Motion to Intervene with FERC that Boott Hydropower is the owner and licensed operator of the Pawtucket Dam, not Enel.

Lastly, the City continues to overstate the applicability of the FPA's savings clause, 16 U.S.C. § 821 (see City's Memorandum of Law at 14).  As has been noted throughout, this provision is interpreted quite narrowly and offers no support for the City's claims in this case:

> The effect of [§ 821], in protecting state laws from supersedure, is limited to laws as to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature.  It therefore has primary, if not exclusive, reference to such proprietary rights.  The phrase 'any vested right acquired therein' further emphasizes the application of the section to property rights.  There is nothing in the paragraph to suggest a broader scope unless it be the words 'other uses.'  Those words, however, are confined to rights of the same nature as those relating to the use of water in irrigation or for municipal purposes.

California v. Federal Energy Regulatory Commission, 495 U.S. 490, 498 (1990) (emphasis added), quoting, First Iowa Hydro-Electric Cooperative v. Federal Power Commission, 328 U.S. 152, 175-176 (1946).  The City makes no allegation that its alleged interest relates to "the use of water in irrigation" or "for municipal purposes."  Thus, the City's interests are not "saved" and the City's claims must be dismissed.

III.   BOOTT HYDROPOWER'S DEED DOES NOT CONTAIN A RESTRICTION REGARDING WATER ELEVATION AT THE PAWTUCKET DAM AND THE CITY LACKS STANDING IN ANY EVENT TO ENFORCE THE TERMS OF BOOTT HYDROPOWER'S DEED BECAUSE THE CITY IS NOT EXPRESSLY IDENTIFIED AS A BENEFICIARY THEREOF

In opposing Defendant Enel's Motion to Dismiss or, in the Alternative, for Summary Judgment, the City argues that Mass. Gen. L. ch. 184, § 23 does not apply to the restriction in the Wang Agreement regarding flashboard height because that restriction is "equivalent to the terms in the deed for the [Pawtucket] Dam." City's Memorandum of Law, at 15.[4]  In particular, the

---

[4]   The City also argues in its Opposition to Defendant Enel's Motion to Dismiss or, in the Alternative, for Summary Judgment that Mass. Gen. L. ch. 184, § 23 is inapplicable because the Pawtucket Dam does not constitute real property, but this argument does not warrant serious consideration by the Court because it is not included in the City's supporting Memorandum of Law and the City does not cite any legal authority in support of its conclusory assertion.  Moreover, the City's argument is incorrect in light of Flax Pond Water Co. v. City of Lynn, 147 Mass. 31, 33 (Mass. 1888), wherein the Supreme Judicial Court of Massachusetts held that a dam and sluiceway were properly taxed as real property.

City notes that "[p]ursuant to the terms of the deed, the owner of the Dam may 'overflow, flood and cover to a height of 92.2 feet above Mean Sea Level ... from July through February, and to a height of 91.2 feet above Mean Sea Level from March through June, real property ... adjacent to the Merrimack River...'" Id. Based on this language in the deed to Boott Hydropower, the City argues in circular fashion that the Wang Agreement does not constitute a "restriction on the use of land" within the meaning of Mass. Gen. L. ch. 184, § 23 because Boott Hydropower would still be restricted with respect to the height of its flashboards under the terms of its deed. Id. at 16. For the reasons stated below, the City's argument is completely without merit.

Contrary to the City's argument, the language in Boott Hydropower's deed does not contain any restriction regarding the water elevation at the Pawtucket Dam. In that regard, the deed to Boott Hydropower provides, in relevant part, as follows:

> C. <u>Water and Flowage Rights</u>. The Grantors hereby grant to the Grantee any and all riparian rights, water rights and 'Mill Powers' which the Grantors may have in the water flowing in the Merrimack River in Middlesex County, Massachusetts, and Hillsborough County, New Hampshire. Such rights include any and all water rights which may exist regardless of how acquired, including, without limitation, any and all water rights which Grantors may have by virtue of riparian rights or any and all water rights which may have been specifically granted to Grantors, or acquired through the conveyance of interests in any dam or flowage rights or acquired by prescription, whether now owned or hereafter acquired. Without limiting the generality of the foregoing, said rights include:
>
> . . .
>
> (iii) the right, without payment of compensation therefore, to overflow, flood, and cover to a height of 92.2 feet above Mean Sea Level . . . from July through February, and to a height of 91.2 feet above Mean Sea level from March through June, real property in Middlesex County, Massachusetts and Hillsborough County, New Hampshire, adjacent to the Merrimack River upstream from the current site of the Pawtucket Dam with flood water, slack space water or back water created by the operation of a dam or dams

> across the Merrimack River in the vicinity of the current site of the
> Pawtucket Dam. . . .

Slagle Affidavit, Exh. A, at 5-6.   By its terms, this broadly worded language in Boott

Hydropower's deed is permissive and inclusive rather than restrictive as argued by the City.

Indeed, Boott Hydropower's deed does not purport to restrict the uses that Boott Hydropower

can make of its land in general, nor does it restrict or prohibit Boott Hydropower with respect to

the height of its flashboards or the elevation of the water behind the Pawtucket Dam.   In short,

the language in Boott Hydropower's deed does not constitute a "restriction on the use of land"

because it does not afford the City or anyone else a "right to compel the person entitled to

possession not to use it in specified ways." U.S. v. Windsor Capital Corp., 524 F.Supp.2d 74, 80

(D.Mass. 2007), citing, Labounty v. Vickers, 352 Mass. 337, 347, 225 N.E.2d 333 (1967).

Moreover, the City does not have standing in any event to seek to "enforce" the above

terms in Boott Hydropower's deed because the City is not expressly identified in the deed as a

beneficiary thereof.  Brear v. Fagan, 447 Mass. 68, 72 (2006).  In that regard, Mass. Gen. L. ch.

184, § 27, specifically provides, in relevant part, as follows:

> No restriction imposed after [December 31, 1961,] shall be
> enforceable:-( *a* ) unless the person seeking enforcement (1) is a
> party to the instrument imposing the restriction and it is stated to
> be for his benefit or is entitled to such benefit as a successor to
> such party, or (2) is an owner of an interest in benefited land which
> either adjoins the subject parcel at the time enforcement is sought
> or is described in the instrument imposing the restriction and is
> stated therein to be benefited. . . .

Brear v. Fagan, 447 Mass. 68, 72 (2006).  "Even with regard to an original party to the

instrument imposing the restriction (i.e., the grantor), § 27(a) precludes enforcement unless the

restriction is stated to be for his benefit. Brear, 447 Mass. at 73, citing, Bynes v. School Comm.

of Boston, 411 Mass. 264, 268 (1991).   Regardless of whether the provision in Boott

Hydropower's deed constitutes a restriction, which it does not, neither the City nor anyone else is

9

expressly identified in the deed as a beneficiary of the purported restriction and as a result it would be "unenforceable" in any event. Brear, 447 Mass. at 76.[5]

Finally, the City argues, again in conclusory fashion, that regardless of whether the Wang Agreement will terminate pursuant to Mass. Gen. L. ch. 184, § 23, the reasonable use doctrine requires Boott Hydropower to abide by the terms of the Wang Agreement restricting flashboard height. City's Memorandum of Law, at 17.   This argument is also without merit.   Under Massachusetts law, the use of one's land, which alters the flow of surface waters, causing harm to the land of another may constitute a private nuisance." Gino v. Anderson, 2009 WL 1741847, *3 (Mass.Land Ct. 2009), citing, DeSanctis v. Lynn Water & Sewer Comm'n, 432 Mass. 112, 116 (1996).   "Under the reasonable use doctrine, liability is imposed only when such use is unreasonable.   A landowner is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. . . ." Id. Not only does the City's argument turn the reasonable use doctrine upside down, but the City has obscured the fact that it has not even alleged a claim for private nuisance, nor are there any supporting facts from which it may reasonably be inferred that Boott Hydropower engaged in an unreasonable use of its property.

Accordingly, there is absolutely no merit to the City's argument regarding the purported restriction in Boott Hydropower's deed, and most critically, the City's claims must be dismissed because the restriction in the Wang Agreement regarding flashboard height will expire on August 26, 2010 by operation of Mass. Gen. L. ch. 184, § 23.[6]

---

[5]    Because the purported restriction in Boott Hydropower's deed is unenforceable, the City's argument that the "restriction [in the deed] would not end until 30 years after the date of the deed's registration, in this case January 19, 2014" is both incorrect and irrelevant. City's Memorandum of Law, at 17.

[6]    The City also argues without citation to any supporting authority that "any restriction in the [Wang] Agreement would be applicable until at least Jan 16, 2011 [sic]", thirty years after the Wang Agreement was recorded with the Registry of Deeds. City's Memorandum of Law, at 17. The statute makes clear, however, that restrictions on the use of land "shall be limited to the term of thirty years after the date of the

10

IV.    DEFENDANT ENEL FULLY COMPLIED WITH THE OBLIGATION TO CONFER
       PURSUANT TO LOCAL RULE 7.1(A)(2) AND COUNSEL FOR DEFENDANT ENEL
       HAS NOW FILED A CERTIFICATE OF COMPLIANCE

The City argues that Defendant Enel's Motion to Dismiss or, in the Alternative, for

Summary Judgment should be denied because "Enel has failed to comply with Local Rule

7.1(A)(2), which requires that '. . . No motion shall be filed unless counsel certify that they have

conferred and have attempted in good faith to resolve or narrow the issue." City's Memorandum

of Law, at 19-20.  Citing the Affidavit of R. Eric Slagle, the City further argues that "Enel made

no such certification and no such conference has taken place." Id. at 20.[7]

Contrary to the City's argument, however, counsel for Defendant Enel fully complied

with the obligation to confer and conferred extensively with counsel for the City in a good faith

effort to resolve or narrow the issues prior to filing Defendant Enel's Motion to Dismiss or, in

the Alternative, for Summary Judgment, including multiple occasions in March and April 2010;

during a full day mediation before Chief Magistrate Judge Dein on June 2, 2010; and on multiple

occasions after the mediation until Chief Magistrate Judge Dein reported on June 10, 2010 that

"[f]urther efforts to settle this case at this time are . . . unlikely to be productive." Certificate of

Compliance with Local Rule 7.1(A)(2) of Matthew P. Zayotti, at ¶¶ 1-2.  These conferences all

took place prior to the filing of Defendant Enel's Motion to Dismiss or, in the Alternative, for

Summary Judgment, and taken together, were more than sufficient to constitute full compliance

with the obligation to confer pursuant to Local Rule 7.1(A)(2).  Abbott v. Rabe, 2005 WL

1000258, *4 n.6 (D.Mass. 2005) (finding sufficient discussion between counsel prior to filing of

motion to dismiss to constitute compliance with Local Rule 7.1(A)(2)); Struzziero v. Lifetouch

---

deed or other instrument . . . creating them. . . ." Mass. Gen. L. ch. 184, § 23 (emphasis supplied).  The
Wang Agreement states that it was "made as of the twenty-sixth day of August 1980" and was notarized on
the same date.  However, even if the City was correct, which it is not, the restriction in the Wang
Agreement will terminate before it comes back into play as of February, 2011.

National School Studios, 677 F.Supp.2d 350, 354 (D.Mass. 2009) (rejecting argument that defendant's motion for summary judgment should be denied for failure to file Local Rule 7.1(A)(2) certification because counsel conferred through case, held settlement conference one year prior to motion and further conference was likely to be futile).

Moreover, although counsel for Defendant Enel inadvertently neglected to certify compliance with Local Rule 7.1(A)(2) at the time of the filing of Defendant Enel's Motion to Dismiss or, in the Alternative, for Summary Judgment, counsel for Defendant Enel cured his inadvertent omission by filing a Certificate of Compliance with Local Rule 7.1(A)(2) on August 18, 2010. Id. at ¶ 3.

Finally, although the City suggests that "a portion of [Defendant Enel's Motion] could have possibly, and perhaps likely, been avoided had the defendant's counsel conferred with the plaintiff and narrowed the issues appropriately," the City's contention is belied on its face by virtue of the fact that the City has opposed Defendant Enel's motion in its entirety and the City does not offer any further insight as to which portion or portions of Defendant's Enel's dispositive motion the City contends it might have been willing to agree. Thus, even if counsel for Defendant Enel failed to confer with counsel for the City, which is the exact opposite of what occurred in this case as discussed above, any such failure would still be excusable because Defendant Enel's Motion to Dismiss or, in the Alternative for Summary Judgment, was certain to be opposed. Gerakaris v. Champagne, 913 F.Supp. 646, 650-51 (D.Mass. 1996) (defendant's failure to confer under Local Rule 7.1(A)(2) "did not warrant[] much by way of discussion" because defendant's motion to dismiss was "certain to be opposed"); Struzziero, 677 F.Supp.2d

---

[7]   Although the City cites the Affidavit of R. Eric Slagle in support of its contention that "no such conference has taken place", there is nothing in the affidavit which supports the City's contention.

at 354 (D.Mass. 2009) (excusing failure to file certification where further conference was likely to be futile).

CONCLUSION

WHEREFORE, based on the additional points and authorities set forth herein, the Defendant Enel North America, Inc. respectfully requests that this Honorable Court enter an Order granting Defendant Enel North America, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment.

DEFENDANT ENEL NORTH
AMERICA, INC.

Respectfully submitted,

Matthew P. Zayotti, BBO #638265
KEEGAN WERLIN LLP
265 Franklin Street
Boston, Massachusetts 02110-3100
(617) 951-1400

Dated:  September 2, 2010

CERTIFICATE OF SERVICE
I hereby certify that this document filed thought the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 2, 2010