United States District Court
District of Massachusetts

```
_____
                               )
CITY OF LOWELL,                )
       Plaintiff,              )
                               )
       v.                      )   Civil Action No.
                               )   10-10359-NMG
ENEL NORTH AMERICA, INC.,      )
       Defendant.              )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The City of Lowell ("the City") brings suit against ENEL North America, Inc. ("ENEL") for breach of contract and a declaratory judgment. Before the Court are ENEL's motion to dismiss or, in the alternative, for summary judgment and the City's motion to amend the complaint.

## I. Factual Background

This dispute concerns the installation of flashboards above the Pawtucket Dam ("the Dam") on the Merrimack River in Lowell, Massachusetts. Generally, the City claims that the five-foot-high flashboards that have been installed on the Dam have caused and may continue to cause flooding on City property and in neighborhoods upstream, including the Clay Pit Brook neighborhood. More specifically, this case sets the City's alleged contractual rights against the defendant's claim that a license issued by the Federal Energy Regulatory Commission

("FERC") controls flashboard height at the Dam.

In August, 1980, the Proprietors of Locks and Canals on the Merrimack River ("the Proprietors") signed a contract ("the Wang Agreement") with Wang Laboratories, Inc. ("Wang"), which owned property upstream from the Dam. Pursuant to the agreement, the Proprietors refrained from maintaining flashboards higher than four feet from March through June of each year, when flooding was most likely, or higher than five feet for the remainder of each year. The City acquired Wang's property by deed in 1994 and thereby arguably became the beneficiary of the Wang Agreement.

In April, 1983, FERC granted a license authorizing Boott Mills and the Proprietors to construct, operate and maintain the Lowell Hydroelectric Project at the Dam ("the Project"). That license provided that the Project would consist of, inter alia, "the 1,093-foot-long and 15-foot-high Pawtucket Dam with 5-foot-high collapsible flashboards". In December, 1983, FERC approved the transfer of the license to Boott Hydropower, Inc. ("Boott"), a subsidiary of ENEL.

In response to concerns expressed by residents about flooding, FERC began an investigation in early 2008 into the same subject at issue in this suit, i.e. the Dam's flashboard and flow-control operations. Lowell Hydroelectric Project Flashboards, FERC Docket No. 2790-052. FERC directed Boott to investigate options for a "crest control" system which could

completely collapse during high flows.  In 2009, in response to FERC's directive, Boott outlined three options and requested that FERC allow the use of four-foot boards in June, 2009 and additional one-foot top boards after July 1, 2009.  In that request, Boott proposed the so-called "4+1" design, in which a one-foot top board sits atop a four-foot board and can be removed.  Boott explicitly contrasted that design with the one authorized by the FERC license.

The investigation is ongoing and, in early March, 2010, FERC acknowledged an increased urgency.  Responding to additional resident complaints, the agency demanded that Boott file its preferred solution to the problem within 15 days.  Shortly thereafter, Boott reported that it would proceed with installing a pneumatic crest control gate system which is apparently the best available technology.  At the time of the filing of its motion to dismiss in July, 2010, Boott planned to file a license amendment application to that effect.

On July 22, 2010, the City moved to intervene with FERC in its investigation and sought to have FERC enforce the Wang Agreement.  FERC allowed the motion to intervene on August 24, 2010, and, as a result, the City is authorized to participate fully in the FERC proceedings with respect to Boott's proposed crest gate system.

## II. **Procedural History**

On February 19, 2010, the City filed its complaint in the Massachusetts Superior Court Department for Middlesex County, accompanied by a motion for a preliminary injunction to prohibit ENEL from installing five-foot flashboards on the Dam before the end of June each year and to require it to remove any flashboards higher than four feet. ENEL removed the case to this Court on March 1, 2010 citing federal question jurisdiction based upon preemption. On April 12, 2010, this Court issued a Memorandum & Order denying the City's motion for a preliminary injunction. The Court concluded that, because the flashboards are designed to bend or give in proportion to water pressure and the presumed difference in water levels resulting from the use of four-foot or five-foot flashboards is minimal, the City failed to demonstrate a serious risk of irreparable harm beyond speculation.

In June of 2010, the parties participated in alternative dispute resolution proceedings but were unable to settle the case. On July 6, 2010, ENEL filed a motion to dismiss, or in the alternative, for summary judgment. Subsequently, the City filed a motion to amend its complaint. Both pending motions are opposed.

## III. **Motion to Dismiss or for Summary Judgment**

Because there are no genuine issues of material fact and the Court can decide defendant's motion as a matter of law, the Court

will treat the motion as one for summary judgment.

**A.   Summary Judgment Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**B.   Preemption by the Federal Power Act**

ENEL proffers three reasons why the City's complaint must be dismissed but the Court will concentrate on ENEL's argument that the 1980 Wang Agreement is preempted by Boott's 1983 FERC License. ENEL maintains that this is so because 1) the Federal Power Act ("FPA"), 16 U.S.C. §§ 791a-825r, occupies the field of federal hydroelectric project licensing and 2) the terms of the Wang Agreement conflict with the terms of the FERC License. The City responds that the Wang Agreement is not preempted because 1) the Agreement is not a state law, 2) the Agreement falls under an exception in the FPA and 3) there is no conflict with the FERC license. The Court is unpersuaded by the City's argument.

**1.   Whether FPA Preemption Applies to the Wang Agreement**

The FPA vests FERC with the authority to issue licenses and to impose conditions on licensees. See 16 U.S.C. §§ 797(e), 803. The United States Supreme Court has held that the FPA preempts state law where compliance with a state law or regulation would frustrate compliance with the FPA or a FERC license. California v. Fed. Energy Regulatory Comm'n, 495 U.S. 488, 506-07 (1990).

The City contends that the FPA preempts only state laws and regulations but not private contracts. The City claims that its status as a municipality does not control because it is merely the successor in interest to a private contract. Nevertheless, it is a well-established rule that "courts will not exert their powers to enforce illegal contracts or to compel wrongdoing." D.R. Wilder Mfg. Co. v. Corn Prods. Refining Co., 236 U.S. 165, 172 (1915). Furthermore, FERC has stated that private agreements "may in no way encumber the licensee's performance of its duties as a licensee". Linweave, Inc., 23 FERC ¶ 61,391 (1983). Thus, to the extent that the Wang Agreement authorizes the violation of the FERC license, it is unenforceable regardless of who are the parties to the contract. See D.R. Wilder Mfg. Co., 236 U.S. at 172.

### 2. Section 821 Exception to Preemption

The City also argues that the Project falls under the exception to FERC's licensing authority set forth in 16 U.S.C. § 821. Pursuant to that statute, the FPA and FERC licenses do not preempt state laws

> relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C. § 821. The Court finds that the Project does not fall under that narrow exception. Section 4(2) of the FPA authorizes FERC to issue licenses

> for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction[.]

16 U.S.C. § 797(e). A hydroelectric power project on a dam, which is the subject of this litigation, clearly is covered by § 4(2). Furthermore, in California v. FERC, the United States Supreme Court held that a minimum stream flow requirement related to a hydroelectric power project did not fall under the narrow exception in § 821. 495 U.S. at 506. The Court relied on its conclusion in First Iowa Hydro-Electric Cooperative v. Federal Power Commission that § 821 refers to proprietary rights only and FERC has exclusive authority over hydroelectric power projects. 328 U.S. 152, 175-76 (1946). Finally, the fact that a FERC license has been issued here indicates that the Dam is within FERC's exclusive authority and not subject to the exception in § 821.

### 3. Whether the Wang Agreement Conflicts with the FERC License

Finally, the City argues that there is no conflict between the FERC license and the Wang Agreement because 1) FERC has never objected to ENEL's compliance with the Wang Agreement and 2) FERC allowed ENEL's request in May, 2009 to install four-foot boards until July 1, 2009. In its April 12, 2010 Memorandum & Order,

this Court found that the City had not shown a likelihood of success on the merits, in part, because there existed

> an ambiguity, based upon the current record, with respect to whether the license intended to establish an absolute height requirement, as defendant contends, or a ceiling under which four-foot boards are permitted[.]

City of Lowell v. Enel N. Am., Inc., 705 F. Supp. 2d 116, 121 (D. Mass. 2010). The City argues that the license allows Boott to install flashboards lower than five feet but it has proffered no evidence that the license should be so interpreted. To the contrary, 16 U.S.C. § 799 provides that a FERC license "may be altered or surrendered only upon mutual agreement between the licensee and the Commission".

Moreover, the fact that the City had to apply for an exception in March, 2009 indicates that the license does not authorize any height other than five feet without special permission. FERC's authorization in March, 2009 was very limited. Boott had permission to install four-foot-high boards until June 30, 2009 and thereafter to install one-foot top boards. Most importantly, Boott's request stated that the top boards installed on July 1, 2009

> would not be manually removed on the following March 1. The top boards would be allowed to fail naturally during elevated flow conditions, but would not be replaced or maintained until July 1 or later.

It is therefore apparent that the permission given by FERC was intended to be temporary and, as a result, it is inconsistent

with the terms of the Wang Agreement. Consequently, the Court concludes that the FERC license conflicts with and, therefore, preempts the Wang Agreement with respect to the height of the boards. As such, ENEL's motion for summary judgment will be allowed and plaintiff's claims for breach of contract and a declaratory judgment will be dismissed.

## IV. Motion for Discovery

The City contends that summary judgment is inappropriate at this stage because there has been no scheduling conference and no discovery has been conducted. The City maintains that it requires discovery of information regarding the relationship between Boott and ENEL in order to respond sufficiently to the motion to dismiss. Because this Court will dismiss this action on preemption grounds, however, it finds that there is no need for discovery relating to defendant's other grounds for dismissal.

The City also reports that ENEL has failed to comply with Local Rule 7.1(A)(2) which requires the parties to confer and in good faith attempt to resolve any dispute before a motion is filed. As a consequence, the City asserts that ENEL should pay its attorney's fees and costs associated with opposing the motion to dismiss. ENEL responds that the parties did confer extensively in a good faith effort to resolve or narrow the issues prior to filing its motion. In fact, the parties engaged

in a full day of mediation before Chief Magistrate Judge Judith Dein on June 2, 2010. As such, the Court declines to award attorney's fees and/or costs to the City.

## V. Motion to Amend

The City moves to amend its complaint to add Boott as a defendant and to add claims against both ENEL and Boott for trespass, negligence, intentional interference with advantageous business relations and negligent interference with advantageous business relations. ENEL opposes the motion to amend, arguing that such an amendment would be futile for the same reasons articulated in its motion to dismiss and, with respect to the additional claims, because the City fails to state claims upon which relief can be granted.

### A. Legal Standard

Under Fed. R. Civ. P. 15(a), leave to amend before trial will be freely granted "when justice so requires". Despite the liberal amendment policy, the Court should deny a motion for leave to amend if, among other reasons, the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).

### B. Application

Because the Court finds that the Wang Agreement is preempted by the FERC license and the FPA, the City's motion to amend is futile with respect to its claims for breach of contract and declaratory judgment against Boott. Similarly, the City cannot

prevail on its proposed trespass, negligence or intentional interference with advantageous business relations claims because Boott's actions were expressly authorized by the FERC license.

The United States Supreme Court has held that a state tort action for damages is preempted where a federal commission has ruled on all of the issues that the party raises in the state court suit. Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 325-26 (1981); see also Ark. La. Gas Co. v. Hall, 453 U.S. 571, 580 (1981) ("Congress here has granted exclusive authority over rate regulation to the Commission. . . . It would surely be inconsistent with this congressional purpose to permit a state court to do through a breach-of-contract action what the Commission itself may not do."); Palmer v. Liggett Grp., Inc., 825 F.2d 620, 628 (1st Cir. 1987) (dismissing state law negligence action challenging a manufacturer's warning labels because it was preempted by the Federal Cigarette Labeling and Advertising Act). Thus, the City's negligence claim is preempted by the FERC license because the City cannot use state tort law to prevent Boott from doing something that FERC has sanctioned.

Moreover, the City's negligence claim is essentially a collateral attack on the FERC license. See Skokomish Indian Tribe v. United States, 332 F.3d 551, 560 (9th Cir. 2003). By alleging negligence, the City is basically claiming that the FERC license was granted unreasonably. The City might have been better off to have challenged the FERC license through the

process established in the FPA for challenging FERC licensing decisions.  Under 16 U.S.C. § 825l(b),

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located[.]

To effect changes to the FERC license, the City must utilize the process established by the FPA, not state tort law.  See Skokomish Indian Tribe, 332 F.3d at 560.

There also can be no action for trespass here because ENEL's actions were not illegal or unauthorized.  See Edgarton v. H.P. Welch Co., 74 N.E. 2d 674, 612 (Mass. 1947).  Finally, with respect to the City's claim for intentional interference with advantageous business relations, it has failed to allege sufficiently an advantageous business relationship with a third party, other than the possibility that it might have rented out its property as an athletic field.  See Blackstone v. Cashman, 860 N.E. 2d 7, 12 (Mass. 2007).  More importantly, any attempt to prove a tortious motive is precluded by the fact that FERC approved the flashboard height and issued a license validating Boott's conduct.  See Kalo Brick & Tile Co., 450 U.S. at 326.  Because the FERC license authorized Boott's actions, there can be no showing of intentional interference with advantageous business relations.  See id.

The City fails to state a claim upon which relief can be granted for negligent interference with advantageous business

-13-

relations because Massachusetts does not recognize that cause of action. See Encompass Ins. Co. of MA v. Giampa, 522 F. Supp. 2d 300, 315 (D. Mass. 2007); Dulgarian v. Stone, No. 907332, 1994 WL 879631, at *3 n.3 (Mass. Super. Feb. 3, 1994).

Because the City has failed to state any claim upon which relief can be granted in its proposed amended complaint, the City's motion to amend will be denied as futile.

**ORDER**

In accordance with the foregoing,

1) Plaintiff's motion to amend (Docket No. 30) is **DENIED;** and

2) Defendant's motion to dismiss or, in the alternative, for summary judgment (Docket No. 26) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 8, 2011